IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:16-CR-170 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | |
| | ) | GOVERNMENT'S SENTENCING |
| MALCOLM ROBERSON, | ) | MEMORANDUM |
| | ) | |
| Defendant. | ) | |

Now comes the United States of America, by and through counsel, Carole S. Rendon, United States Attorney, and Benedict S. Gullo and Edward F. Feran, Assistant United States Attorneys, and respectfully requests that the Court sentence the defendant, Malcolm Roberson, to a within-guideline sentence of 41–51 months of imprisonment and three (3) years of supervised release.

**I.     Procedural Background**

After a three-day trial, on December 8, 2016, Roberson was convicted by a jury on Count One of the Indictment, False Statement During Purchase of a Firearm, 18 U.S.C. §§ 922(a)(6) and 2, and Count Two of the Indictment, Possession of a Firearm by a Prohibited Person in violation of 18 U.S.C. § 922(g)(1).

For each count of conviction, Roberson faces a statutory maximum penalty of ten years of imprisonment, a maximum fine of $250,000, not more than three years of supervised release, and a $100 mandatory special assessment.

For Count 1, Roberson's Sentencing Guidelines are calculated under U.S.S.G. § 2K2.1. Because he committed the instant offense after sustaining a prior crime of violence, his base offense level is 20 pursuant to U.S.S.G. § 2K2.1(a)(6). Specifically, Roberson was previously convicted of Assault of a Police Officer in violation of Ohio Revised Code Section 2903.13 on October 13, 2011. Assault of a Police Officer is a Felony in the Fourth Degree. A certificate of Roberson's conviction was admitted during trial as Exhibit #6. In United States v. Abdul Glover, 2017 WL 838280, *1–3 (6th Cir. filed Mar. 3, 2017), the Sixth Circuit re-affirmed its decision in United States v. Evans, 699 F.3d 858, 862–66 (6th Cir. 2012), holding State of Ohio Assault of a Police Officer statute is a crime of violence.

For Count 2, Roberson's Sentencing Guidelines are also calculated under U.S.S.G. § 2K2.1. Count 2 however is grouped with Count 1 in accordance with U.S.S.G. § 3D1.2(d). Therefore, there is no multiple count adjustment increase.

To date, Roberson has not demonstrated any acceptance of responsibility.

Roberson's guideline imprisonment range is 41–51 months.

**II.    Factual Background**

Roberson and co-defendant Chimere Turner began dating in December of 2015. They were introduced to each other by Roberson's grandmother. On Valentine's Day in February 2016, Roberson doted on Turner and her nine-year-old daughter while shopping at a local mall. By all accounts, the relationship was going well.

On February 20, 2016, Roberson and Turner traveled to a gun show in Berea, Ohio. While there, Roberson asked Turner to purchase for him a Jimenez Arms Inc., Model J.A. NINE, 9mm pistol. Turner had neither an interest in owning or possessing a firearm nor a desire to purchase the firearm for Roberson. She had never shot a gun in her life, and she was not a target shooter or hunter. However, Roberson convinced Turner to do so by telling her that he didn't have his identification with him and that he'd re-register it in his name the next day. After the sale was completed—and Turner falsified an ATF form to purchase the firearm, Roberson bought a box of ammunition from another dealer. ATF and Division of Cleveland law enforcement personnel watched the sale, a clearly disinterested Turner during the sale, and a jovial Roberson during the sale.



February 20, 2016 Photo of Roberson and Turner During Firearm Purchase.



February 20, 2016 Photo of Roberson and his Friend During Firearm Purchase.

After the gun show, Roberson drove them to Roberson's home in Warrensville Heights. Roberson took the gun and ammo from the car and left both items inside the home. Inside the home also lived his mother and father. Roberson's father is a convicted felon. Turner waited in the car while Roberson left a firearm and ammunition in the house where another prohibited person resided. When Roberson returned to his car, he angrily drove Turner home then later broke up with her. In the ensuing weeks, Turner tried to have the firearm returned to her or get Roberson to re-register the firearm in his name. Roberson ignored her requests.

Meanwhile, ATF was completing its investigation into Roberson and Turner's firearm purchase. They learned Roberson's identity, and that Roberson was a convicted felon prohibited from possessing firearms or ammunition. They also learned that the firearm was manufactured outside the State of Ohio. Finally, they secured and reviewed a copy of the ATF form that averred that Turner was the lawful purchaser of the firearm. On that ATF form, Turner conveniently failed to check the block that asked if she was the lawful purchaser of the firearm.

4

On March 18, 2016, ATF and Division of Cleveland law enforcement personnel visited Turner at her home.  Turner was a single mother, she was born and raised in Cleveland, she lacked even a traffic ticket to her name nonetheless a single encounter with the criminal justice system, and she was successfully employed by the Cleveland Clinic—where her career was progressing and she had previously garnered several accolades.  She was in line for a promotion.  Almost immediately after the initiation of the interview, Turner broke down and began crying.  She told law enforcement where the firearm was and why she bought it for Roberson.

After Turner's interview, ATF and Division of Cleveland law enforcement personnel traveled to Roberson's home—the home he claimed on his BMV driver's license renewal application just one day earlier.  Roberson personally retrieved the Jimenez Arms Inc., Model J.A. NINE, 9mm pistol from the closet just inside the front door.  The firearm was trigger-locked; however, both safety keys to the trigger lock were in the same box.  In the two magazines were a total of nineteen live 9mm rounds.  During Roberson's interview, in summary, he insisted that the gun was for Turner and for her protection, that he was safe-keeping the gun so Turner's daughter couldn't get access to the firearm, and that he lived at another location.  In the same interview, Roberson called his parent's house "my house" and stated that Turner bought the gun for him because he was receiving threats over a recent car sale.



March 20, 2016 Photo of Recovered Jimenez 9mm Pistol and Ammo.

While preparing this matter for Grand Jury, Turner was interviewed a second time. Fearing that her complicity in the firearm sale would land her in trouble with the law, Turner concocted a phony story to law enforcement that the gun was for herself for protection.

On May 25, 2016, Roberson and Turner were indicted. Turner later pled guilty to Count One of the Indictment, False Statement During Purchase of a Firearm, 18 U.S.C. §§ 922(a)(6) and 2. After testifying at Roberson's trial, Turner was sentenced to two (2) years of probation. In addition to her first-ever encounter with the criminal justice system resulting in a federal felony conviction, the Cleveland Clinic rescinded its promotion offer, despite her over nine (9) years of loyal and dedicated service. Her lost promotion offered increased pay and responsibilities that would have provided further financial security to Turner and her child. Because of her federal conviction, she is ineligible to ever receive the promotion.

### III. Argument

#### A. The Serious Nature and Circumstances of Roberson's Actions.

At the micro-level, Roberson cannot minimize the nature of his crimes. Statutorily, both

counts are Class C felonies and carry a statutory, potential sentence of imprisonment of up to ten (10) years.  Even with a Criminal History Category of III, Roberson faces a guideline range of over four (4) years imprisonment.

Practically, Roberson used and manipulated a single mother into committing a federal felony to his benefit.  Quite simply, he committed his crimes because he believed he needed protection.  He was receiving threats over a car sale he just made.  Selfishly and sadly, he successfully preyed on the right female:  Turner was a 31-year old single mom, and a mom with *everything* to lose, i.e., her freedom, custody of her child, and her employment with the Cleveland Clinic.  On February 20, 2016, he attempted to ruin Turner's life—and in the process, he circumvented a federal law that keeps firearms and ammunition out of the hands of convicted felons.  In this case, he not only possessed the firearm as a convicted felon—he also left the firearm and ammunition in the care of a convicted felon.  Regardless of whether Roberson knew that his father is a felon, he—and no one else—left a ready-to-be fired firearm with another felon.

At trial, Roberson wisely attempted to distance himself from the very home he placed the firearm in.  The home was already on law enforcement's constant radar—where the Warrensville Heights police had responded at least ten times over the past decade for family member disputes and issues.  During his case-in-chief, Roberson offered the testimony of his ex-girlfriend, who testified that Roberson lived with her in 2016 until his early-June arrest.  His ex-girlfriend offered mail as evidence of his residency with her.  Most of the mail however was unopened, junk mail—and her own testimony contradicted an interview she gave to ATF just one week prior.  Finally, during her testimony, Roberson's ex-girlfriend called him a "dog" for his indiscriminate use of women—a trait consistent with how he used Turner in this case.

7

At the macro-level, the seriousness of Roberson's crimes also cannot be overstated. There are currently a variety of federal, state, and local efforts to combat gun violence. Some of those efforts include court programs such as re-entry and prevention. Other efforts are undertaken by law enforcement, community, and faith-based groups dedicated to solving the gun violence that plagues the greater Cleveland area. Within the Northern District of Ohio, law enforcement initiatives such as the Violent Gun Reduction and Interdiction Program (VGRIP) have been used in the past in both Cleveland and Youngstown.

Despite all of those efforts, gun violence and recidivism among convicted felons illegally in possession of firearms remain high. The Ohio Coalition Against Gun Violence (OCAGV), a non-profit organization dedicated to prevent gun violence through education, advocacy, and public awareness, notes that someone in the State of Ohio is killed with a gun every eight hours. According to OCAGV's website, http://ohioceasefire.org/content/about, over 1,200 lives were taken by gun violence each year in the State of Ohio from 2011–2014. According to the Plain Dealer, Cleveland suffered a horrifically violent July of 2016.[1] In just one month—a month after Roberson was arrested for this case, 92 victims were shot, and 12 of those victims killed. The article sadly outlines cases involving gun violence, to include a 2-year old girl shot in the head, an 11-year old girl shot in the leg, and a 19-year old fatally shot while standing at a bus stop. The article notes that July of 2016 was the third deadliest month in Cleveland for gun violence since 2010.

Clearly, the community's perspective regarding gun violence and the possession and use of firearms by prohibited persons in Northeast Ohio is relevant to the sentencing factors in 18

---

[1] See http://www.cleveland.com/metro/index.ssf/2016/08/more_than_90_shot_12_killed_in.html.  (Last accessed on February 27, 2017).

8

U.S.C. § 3553(a).  Specifically, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law; and to afford deterrence to other criminal conduct and *protect the public* must be imposed according to the community standards in which an offender resides.  Law enforcement has spoken; local, state and federal government officials have spoken; and the public has spoken.  The resounding message is that the unlawful possession of firearms is a serious crisis in Cleveland.  Accordingly, federal sentences should and must be imposed to reflect the community's intolerance of the violence that results from the illegal possession of firearms—the impetus of which was to arm Roberson against a person he sold a car to.

For the above reasons, from both a micro and macro-perspective, Roberson's sentence should reflect the serious nature and circumstances of his actions.

### B.     Roberson's History and Characteristics.

Roberson has an escalating criminal history.  Born in 1990, Roberson has been found guilty of committing crimes in the State of Ohio that include:  driving without an owner's consent, attempted burglary, assault of a police officer, driving under suspension, driving without a license, obstructing official business, and theft.  From a lay person's perspective, it is fair argument that Roberson's Criminal History Category of III under-represents his criminality.

Considering Roberson's criminal history, and his acts in this case to circumvent a federal gun law, it is entirely fair to state that Roberson is un-phased and unappreciative of all of the chances he's been given, all of the suspended jail sentences he's benefited from, the terms of probation he's been sentenced to (in lieu of harsher jail sentences)—one probation sentence that afforded Roberson mental health treatment, and all of the encouragement from family members,

friends, judges, and defense attorneys who challenged him to become a law-abiding citizen and a productive member of society.

Consequently, Roberson's crimes should be dealt with harshly, and his sentence must consider the totality of Roberson's criminal past.

### C. Roberson's sentence should emphasize respect for the law.

Another factor the Court must consider in imposing a sentence is the need for the sentence to reflect the seriousness of the offense and to promote respect for the law.  18 U.S.C. § 3553(a)(2)(A).  Here, Roberson committed his crimes as a convicted felon—while he was on clear notice that convicted felons are prohibited from possessing firearms or ammunition.  In essence, Roberson thumbed his nose at a law enacted to protect society writ large—in a Northeastern Ohio community with documented and tragic issues of gun violence.

Consequently, Roberson's sentence should reflect a stern respect for the law—a respect he clearly has yet to learn.

### D. The Court should consider general and specific deterrence for Roberson.

In imposing a sentence, the Court must also consider the need for the sentence to "afford adequate deterrence to criminal conduct."  18 U.S.C. § 3553(a)(2)(B).  Admittedly, specific deterrence may be looked upon by this Court as a less optimistic goal of sentencing given Roberson's failure to accept responsibility for his crimes, his criminal history, and his actions in this case.

Nevertheless, a within-guideline imprisonment sentence will message to Roberson that the Court will not accept his transgressions without imposing an effective punishment; thereby, promoting the objectives of general and specific deterrence.

Conversely, a downward variance—which Roberson will likely ask this Court to entertain, would only serve to empower Roberson to commit future crimes.

### E. Roberson's sentence may provide effective correctional treatment.

Finally, imposing a sentence in the correctly calculated range of the Sentencing Guidelines may serve to provide needed care, treatment, and training for Roberson. 18 U.S.C. § 3553(a)(2)(D).

## IV. Conclusion

For the reasons outlined above, the Government respectfully requests that the Court impose a sentence within the correctly calculated Sentencing Guideline range of 41–51 months of imprisonment, to be followed by three years of supervised release.

Respectfully submitted,

CAROLE S. RENDON
United States Attorney

By: */s/ Benedict S. Gullo*
Benedict S. Gullo (NY: 3013570)
Edward F. Feran (OH: 0039083)
Assistant United States Attorneys
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113–1852
(216) 622-3807
(216) 522-2403 (facsimile)
Benedict.Gullo@usdoj.gov

CERTIFICATE OF SERVICE

     We hereby certify that on this 8th day of March 2017, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

*/s/ Benedict Gullo*
Benedict Gullo
Assistant U.S. Attorney

*/s/ Edward F. Feran*
Edward F. Feran
Assistant U.S. Attorney